# Imperial Fire Insurance Company, Plff. in Err., v. Henry Dunham, to Use, etc.

The application upon which a policy of insurance is issued is not admissible in evidence on the trial of an action on the policy, between the parties thereto, unless it is contained in or attached to the policy. An offer to attach it to the policy at the trial comes too late; it must have been attached when the policy is delivered.

If a transfer of insured property without the assent of the insurer has worked a forfeiture of the policy, subsequent assent of the insurance company to such transfer and to the assignment of the policy to the vendee will renew the obligation of the policy.

If the agent of an insurance company, who has power to receive proposals for insurance, to receive moneys, to countersign, issue, renew, and consent to the transfer of policies of insurance, consents to the transfer of a policy which has been so forfeited, and notifies the company of his action, and the company makes no objection until after the destruction of the property by fire, it will be held to have assented to the transfer.

(Decided March 29, 1886.)

Error to the Common Pleas of Bradford County to review a judgment for plaintiff in an action upon a policy of fire insurance. Affirmed.

The facts of the case appear in the charge of the court below which was as follows:

This is an action by F. T. Page against the Imperial Insurance Company of London. The plaintiff seeks to recover $1,200 and interest from the time it is allowable under the policy. The undisputed evidence in the case shows that O. A. Seeley, on the 21st of April, 1880, took a contract for a tract of

NOTE.—A reargument was granted in this case, and the former judgment affirmed. 117 Pa. 460, 2 Am. St. Rep. 686, 12 Atl. 668.

The act of May 11, 1881 (P. L. 20), requiring the application to be attached to the policy to be admissible in evidence, applies to insurance upon property (Mutual Live Stock Ins. Co. v. Dutton, 6 Del. Co. Rep. 148; Hebb v. Kittanning Ins. Co. 138 Pa. 174, 20 Atl. 837), but does not refer to oral applications (Lenox v. Greenwich Ins. Co. 165 Pa. 575, 30 Atl. 940). The failure to attach does not prevent the offering of the policy. Norristown Title, Trust & S. D. Co. v. John Hancock Mut. L. Ins. Co. 132 Pa. 385, 19 Atl. 270; Mahon v. Pacific Mut. L. Ins. Co. 144 Pa. 409, 22 Atl. 876. But the act was passed for, the benefit of the insured, and he may offer the application though not attached. Norristown Title, Trust & S. D. Co. v. John Hancock Mut. L. Ins. Co. 132 Pa. 385, 19 Atl. 270.

land in Colley township, Sullivan county, containing about 640 acres. The consideration mentioned in the contract was $5,129.50.

There is no evidence showing that Seeley paid any part of the purchase money, but he went on and erected a sawmill, and on the 8th day of February, 1883, obtained from the agent of the defendant the insurance policy upon which this action is brought, upon the mill and certain machinery and tools therein.

On the 19th of May, 1883, the property insured was destroyed by fire. Notice and proof of loss was made to the company as required by the terms of the policy. The company refused to pay, and this action was brought by F. T. Page, to enforce the payment of the amount of the policy. On the 11th day of November, 1881, Smull, who made the contract to Seeley, sold and conveyed the land to F. T. Page, the present plaintiff, and also assigned to him his contract with Seeley, so that Page then stood in the place of Smull, who had made the contract to Seeley.

On the 29th of March, 1883, Seeley assigned his interest in the land under his contract from Smull to Page, and on the same day Page made a contract of sale to Henry Dunham, of this property, for $10,000, and Dunham paid $400 on this contract before the fire occurred, which it seems is all the purchase money that has been paid. In the contract between Page and Dunham, Dunham agreed to keep the property insured for $1,200; and, in case of loss by fire, the insurance money was to be paid to Page.

Now, the transfer of his interest to Page, by Seeley, on the 29th of March, 1883, avoided the policy, because Seeley took the insurance; and, after he had conveyed his interest in the property to Page, he had no insurable interest left in it, and by the terms of the policy it was forfeited. Afterwards, on the 14th of April, 1883, Mr. A. D. Clarke, who was the agent of the company, wrote on the face of the policy that the money, in case of loss on the policy, was to be paid to F. T. Page, as his interest might appear; and Seeley assigned the policy, the same day, to Dunham.

On the 17th of April, the policy was sent to Mr. Clarke, the agent, by Mr. Fellows, and Mr. Clarke approved of that assignment and forwarded to the company, by the first mail, a statement or report, showing what he had done on the 14th, and also

on the 17th of April; and the company, so far as the evidence in this case shows, made no objection to what had been done by Mr. Clarke.

It is claimed, on the part of the plaintiff, that, although the policy was forfeited by the transfer by Seeley of his interest to Page, on the 29th of March, yet that, by the writing by Mr. Clarke, on the 14th and 17th of April, approving of the assignment, the policy was restored and left in full force as an insurance to Henry Dunham; and that is the principal question in this case.

The certificate of agency from the company to Mr. Clarke testifies that David A. Clarke of Orcutt Creek, in the county of Bradford and state of Pennsylvania, has been appointed and duly constituted agent of the Imperial Fire Insurance Company, with full power to receive proposals for insurance against loss and damage by fire in Orcutt Creek and vicinity; to receive moneys and to countersign, issue, and renew and consent to the transfer of policies of insurance, subject to the rules and regulations of said company and such instructions as may from time to time be given by its resident manager at New York.

Under this certificate, we think that Mr. Clarke had power to renew and reinstate that policy, provided he knew that there had been a transfer of the property before doing it. Confessedly, the policy was forfeited on the 29th of March, and, unless Mr. Clarke had knowledge of the fact of the transfer and forfeiture when he signed on the face of the policy, on the 14th of April, and approved of the assignment on the 17th of April, it was not renewed, and the plaintiff cannot recover. But, if you find that he did have full knowledge of the transfer of the property, and did it with full knowledge of such transfer, then we think that, under his power in that certificate of agency, the policy was restored and became of force and binding effect upon the company.

The uncontradicted evidence of Mr. Page is that, at the time the transfer was made to him by Seeley, on the 29th of March, 1883, it was talked over there in regard to the assignment of the policy, and that it was agreed that Seeley should assign to Dunham. Mr. Page also testifies that soon after, and before the 14th of April, he saw Mr. Clarke and told him of that agreement, and also told him of the transfer of the property, and that the policy at the time he told him, being where Mr. Seeley re-

sided, at Newfield, Tompkins county, New York, it could not be done that day. But the policy was afterwards returned, and the fact is not disputed that it was presented to Mr. Clarke, first in Mr. Fellows' office, and afterwards, for his approval of the assignment, at Orcutt Creek.

Mr. Clarke, however, swears that he had no knowledge of any transfer of the property on the 14th of April, when he wrote on the face of it that in case of loss the money was to be paid to Page, as his interest might appear. But he says that Mr. Fellows sent it to him by mail and then told him, in the letter, that the property had changed hands, and that that was the first he knew of it. He then approved of the assignment.

Now, Mr. Clarke probably knew that, if there had been a transfer of the property, the policy was forfeited; and he admits that Mr. Fellows told him that there had been a transfer then, and he approved of the assignment to Dunham and returned it, as he thinks, by mail, and afterwards saw Mr. Page and asked him if he had received his policy and if it was all right, and Mr. Page replied that he had received it and that he supposed it was all right.

Mr. Clarke also says that he afterwards made a report to the company, which is in evidence, and that he heard nothing from the company, but that it approved of what he had done. He also adds, in answer to a question of counsel, that it is usual for the company to notify him at once in case they disapprove of any of his acts.

Now, as said before, if you find from the evidence that Mr. Clarke had knowledge of the transfer of the property and the forfeiture of the policy on the 14th and 17th of April, and after such knowledge wrote upon it what he did, that restored the policy to force in the hands of Henry Dunham; and that is the only fact that is submitted to you as being in dispute. If you find that he had such knowledge, then the plaintiff is entitled to recover the amount of his claim. If you find that he did not have such knowledge, then the plaintiff is not entitled to recover anything.

Verdict and judgment having passed for plaintiff, defendant brought error.

*Erastus P. Hart* and *Rodney A. Mercur,* for plaintiff in error.

—The assignee of the policy and transferee of the property can only recover in case the insured could recover had no transfer of policy and property been made. State Mut. F. Ins. Co. v. Roberts, 31 Pa. 438.

By the provisions or conditions of the policy the assured is called upon to disclose his title, whether he has or has not the fee, and whether his interest is the entire, unconditional, and sole ownership; and, by the acceptance of the policy with these provisions therein, and not disclosing his true interest, the assured virtually represents, or declares and promises, that he has the fee, and that his ownership is entire, unconditional, and sole. Lasher v. St. Joseph F. & M. Ins. Co. 86 N. Y. 423; Mers v. Franklin Ins. Co. 68 Mo. 127.

The court below erred in holding that the forfeiture of the policy, which was concededly caused by what took place on March 29th, was waived, and the policy revived and of effect to the assignee. The agent had no power to waive the forfeiture, and, if he had the power, his acts were ineffectual to that end, as facts material and essential to be known and considered in deciding whether to waive or not were not disclosed to or known by him.

If the agent had power to waive the forfeiture and revive the policy and make it inure to Dunham's benefit, this result was not produced, because there could be no waiver of the forfeiture without knowledge of all the facts material and proper to be considered in determining the question. Lycoming Ins. Co. v. Mitchell, 48 Pa. 367; Cumberland Valley Mut. Protection Co. v. Mitchell, 48 Pa. 379; Diehl v. Adams County Mut. Ins. Co. 58 Pa. 443, 98 Am. Dec. 302.

If the agent did attempt to waive the conditions of the policy, such waiver was of no force or effect, because beyond the scope of his power. Waynesboro Mut. F. Ins. Co. v. Conover, 98 Pa. 384, 42 Am. Rep. 618; Pottsville Mut. F. Ins. Co. v. Minnequa Springs Improv. Co. 100 Pa. 142.

The policy, having been concededly forfeited by the alienation of March 29, could not be restored to obligatory effect without a new consideration, or unless there be circumstances that estop the defendant from claiming the forfeiture, neither of which exists. Ripley v. Ætna Ins. Co. 30 N. Y. 136, 164, 86 Am. Dec. 362; Titus v. Glens Falls Ins. Co. 81 N. Y. 410.

Where the company was discharged from liability, responsi-

bility for the loss would not reattach, without proving the authority of the agent to waive it or a new consideration to sustain it. Trask v. State F. & M. Ins. Co. 29 Pa. 198, 72 Am. Dec. 622.

After a policy has been forfeited, it cannot be renewed but by express agreement. Diehl v. Adams County Mut. Ins. Co. 58 Pa. 443, 98 Am. Dec. 302; Sparrow v. Insurance Co. 41 Phila. Leg. Int. 498.

To constitute a waiver there must be some official act or declaration during the currency of the time. After the time has expired nothing but the express agreement of the company could renew or revivify the contract. Beatty v. Lycoming County Mut. Ins. Co. 66 Pa. 16, 5 Am. Rep. 318.

The ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with a full knowledge of all the material facts; if they be either suppressed or unknown the ratification is treated as invalid, because founded on mistake or fraud. Viall v. Genesee Mut. Ins. Co. 19 Barb. 440; Bevin v. Connecticut Mut. L. Ins. Co. 23 Conn. 244; Owings v. Hull, 9 Pet. 607, 9 L. ed. 246; Bennecke v. Connecticut Mut. L. Ins. Co. 105 U. S. 360, 26 L. ed. 991.

*Evans & Maynard,* for defendant in error.—A purchaser by contract has the right to say, as between himself and the insurer, that he owns the fee. Pennsylvania F. Ins. Co. v. Dougherty, 102 Pa. 568.

A purchaser by articles of agreement has an equitable interest in the property purchased, and, so far as effecting insurance is concerned, is the owner of the property. The extent of his equity may be important in matters of insurance where the question of fraud or over insurance is raised, or the rights of a married woman are concerned, but in the present case it is admitted that the value of the property destroyed was greater than the amount for which it was insured. When there are liens against the vendor, and also against the vendee, the extent of the vendee's interest should be measured by the payments made and increased valuation of the property.

But in actions to enforce the payment of insurance risks no such rule is necessary, and it is not applicable. Siter's Appeal, 26 Pa. 178; Millville Mut. F. Ins. Co. v. Wilgus, 88 Pa. 107; Reynolds v. State Mut. Ins. Co. 2 Grant Cas. 329.

Under the evidence of Page and Seeley, in which they say it was agreed on March 29, when the contracts were drawn, that the policy was to be assigned, and the loss, if any, paid to Page, as his interest might appear, the whole transaction constituted one entire contract, and the transfer of the property was not complete until the policy was transferred in accordance with that agreement. Manley v. Insurance Co. of N. A. 1 Lans. 20.

But, if the transfer of the property be regarded as prior to the company's consent to a transfer of the policy, there is authority for holding that the policy was revived by subsequent consent. Shearman v. Niagara F. Ins. Co. 46 N. Y. 526, 7 Am. Rep. 380, held that there was nothing in the terms of the policy to require that consent should be previous to transfer of title, to give it validity. See also Buchanan v. Exchange F. Ins. Co. 61 N. Y. 26.

The assent of the insurer to the assignment constituted a new and valid contract with the assignee, to indemnify him in the same manner as the original insured, for which the unexpired premium already paid and exemption from liability to the vendor were sufficient consideration. May, Ins. §§ 1, 2, 6; Carpenter v. Providence Washington Ins. Co. 16 Pet. 495, 10 L. ed. 1044; Angell, Ins. § 1; Sadlers Co. v. Badcock, 2 Atk. 554; Wilson v. Hill, 3 Met. 66; Ellis, Ins. 1; 1 Phillips, Ins. 1; Lane v. Maine Mut. F. Ins. Co. 12 Me. 44, 49, 28 Am. Dec. 150; Rollins v. Columbian Mut. F. Ins. Co. 25 N. H. 207; Folsom v. Belknap County Mut. F. Ins. Co. 30 N. H. 240; Fogg v. Middlesex Mut. F. Ins. Co. 10 Cush. 337.

Flanders on Insurance, p. 165, says: An agent authorized to accept risks, to agree upon and settle terms of insurance, and to carry them into effect by issuing and renewing policies on behalf of the company, is thereby constituted a general agent at the place where he transacts business; and he can as well exercise his authority by renewing and continuing a policy which expired as by making a new one. Post v. Ætna Ins. Co. 43 Barb. 351.

And his principals are bound as well by a waiver on his part of the condition of prepayment of the premium, as by his contracts of insurance. Sheldon v. Atlantic F. & M. Ins. Co. 26 N. Y. 460, 84 Am. Dec. 231.

He may not only insure, renew, and receive notice of other insurance, but may waive a breach of condition as to other in-

surance; and this waiver may be expressed or implied, as by acceptance of the premium with notice of the breach.   Carroll v. Charter Oak Ins. Co. 40 Barb. 292; Flanders, Ins. p. 437.

Upon an assignment of the property and the policy being perfected there is an entire change in the contract, in the party contracted with, in the insurable interest in the property at risk; and it becomes an insurance on the property of the assignee, and ceases to be a contract of insurance of the property of the assignor.    Fogg v. Middlesex Mut. F. Ins. Co. 10 Cush. 337; Hooper v. Hudson River F. Ins. Co. 17 N. Y. 424; Buffalo Steam Engine Works v. Sun Mut. Ins. Co. 17 N. Y. 401; 1 Phillips, Ins. § 84; Hale v. Mechanics' Mut. F. Ins. Co. 6 Gray, 169, 66 Am. Dec. 410; Loring v. Manufacturers' Ins. Co. 8 Gray, 28; Foster v. Equitable Mut. F. Ins. Co. 2 Gray, 216; Goodall v. New England Mut. F. Ins. Co. 25 N. H. 169; Sanders v. Hillsborough Ins. Co. 44 N. H. 238.

A policy which as become voidable may be assigned; and, if the insurer, with a knowledge of that fact, consents to the assignment, he waives the right to avoid, and must stand by it.   Flanders, Ins. 461; Cumberland Valley Mut. Protection Co. v. Mitchell, 48 Pa. 378; Hyatt v. Wait, 37 Barb. 29.


PER CURIAM:

Under the act of 11th May, 1881, the application was properly rejected.   The offer on the trial to then attach it to the policy was too late.   It should have been attached to the policy when the latter was delivered or accompanied the delivery thereof.

It may admit of question just how long after the forfeiture of a policy the agent was authorized to renew it.   In this case, however, he did renew it, and the notice thereof was received by the company nine days after the transfer of title was alleged to have been made.

While the notice did not recite the time correctly, yet the company was not injured by this.   No objection was made to the transfer until after the destruction of the property by fire.   This occurred nearly a month after notice of the transfer, and the acquiescence of the company in its validity.

Judgment affirmed.